GARWOOD, Circuit Judge:
Appellants Rama and Gene Stanford appeal the holding of the bankruptcy court, affirmed by the district court, that tax liens by various Texas local governmental entities against realty the debtors own, based on ad valorem taxes, are secured claims for purposes of the Bankruptcy Code. We affirm.
I.
On September 8, 1982, Rama Stanford and Gene Stanford, Rama’s son, (“debtors”) filed a petition for Chapter 11 relief; their bankruptcy was subsequently converted into a Chapter 13 proceeding. The debtors own real property interests, including oil and gas rights and land, subject to taxation by one Texas city, two Texas counties, and three school districts (the “tax units”). The tax units filed proofs of claim in the bankruptcy proceedings for ad valorem taxes and requested that their claims for these taxes — dating from as far back as 1966 on some of their property — be allowed as secured claims under 11 U.S.C. § 506. The debtors objected, contending that the tax claims were unsecured and that the only special recognition of such tax obligations in the Bankruptcy Code is its denomination of property taxes as seventh-priority unsecured claims under 11 U.S. C.A. § 507(a)(7)(B) (1984).[1] Deciding the dispute on stipulated facts, the bankruptcy court determined that the claims were secured claims under section 506 for purposes of a reorganization plan under section 1322.
Appealing this decision to the district court, the debtors submitted a statement of issues, see Bankruptcy Rule 8006, representing that the sole question on appeal was whether the ad valorem tax lien provisions of Texas law created statutory liens that were secured interests for purposes of section 506, or only priority claims for purposes of section 507. The district court affirmed the bankruptcy court, and this appeal followed. Whether these tax claims are secured or unsecured is the sole question presented for our review.[2]
II.
The debtors concede that the traditional rule under the Bankruptcy Act, at least from 1938 until 1966, was that a properly perfected statutory lien for taxes created under state law enjoyed secured status for bankruptcy purposes. E.g., United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964) (involving the relative priority of federal and state tax liens); Franchise Tax Board v. Danning (In re Perry), 487 F.2d 84 (9th Cir.1973) (holding that a state income tax lien *355 against personalty was not perfected under state law unless the taxing authority had levied on the property, and, there having been no levy, was therefore not a secured claim for purposes of bankruptcy), cert. denied, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); Rochelle v. City of Dallas, 264 F.2d 166 (5th Cir.) (holding that a city ad valorem property tax statutory lien was valid and not a “secret or hidden lien”); id. at 167 n. 2 (citing cases on the city’s “established status as a lien holder”), cert. denied, 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70 (1959).
The Bankruptcy Code now provides in section 545 a limited list of specific circumstances under which a trustee can avoid all or part of a statutory lien.[3] We note that decisions applying the Bankruptcy Code continue to treat statutory liens created by state law for taxes as secured claims. E.g., Maryland National Bank v. Mayor and City Council of Baltimore (In re Maryland Glass Corp.), 723 F.2d 1138 (4th Cir.1983) (concluding that city statutory tax liens were superior to the perfected security interest of a mortgagee). See also Pearlstein v. United States Small Business Administration, 719 F.2d 1169 (D.C.Cir.1983) (discussing the legislative history of pertinent provisions and amendments in the bankruptcy laws); Artus v. Alaska Department of Labor (In re Anchorage International Inn, Inc.), 718 F.2d 1446 (9th Cir.1983) (discussing policies supporting according a special status to state governmental entities’ claims against the debtor’s estate in the context of a lien against a liquor license).
Appellants’ core contention is that Congress has eliminated the secured status of all unrecorded statutory tax liens, including those in favor of state entities. This argument relies, first, on Congress’ enactment of the Tax Lien Act of 1966, 26 U.S.C. § 6323 et seq., an Internal Revenue Code provision which, inter alia, requires the recordation of federal general assessment tax liens, id. § 6323, to make the tax lien enforceable against subsequent purchasers of, or holders of security or lien interests in, the property subject to the tax lien. Debtors claim that Congress, by enacting this provision, intended to end “[t]he day of the secret statutory lien, state or federal.”
This argument is meritless. In the Bankruptcy Code, Congress specifically provided the conditions under which statutory liens on a debtor’s property could be avoided by the trustee in bankruptcy; Congress could have allowed a trustee to avoid all unrecorded liens or all unrecorded state tax liens, but did not do so. Instead, Congress provided that a lien could be avoided if, inter alia, it “is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser ... whether or not such a purchaser exists.” 11 U.S.C. § 545(2). In effect, Congress largely left the question to state law, with certain exceptions and limitations not pertinent to the instant dispute. If a state elects, as Texas has, to make tax liens on realty enforceable against subsequent bona fide purchasers, section 545 incorporates that state’s standard and accords secured status to the lien. Id. § 506(a) (“An allowed claim ... secured by a lien on prop *356 erty ... is a secured claim ... ”). See City of San Antonio v. Terrill, 202 S.W. 361 (Tex.Civ.App.—San Antonio 1918, writ ref’d) (holding a purchaser of real estate cannot be an innocent bona fide purchaser with regard to unpaid ad valorem taxes); Tex.Prop.Tax Code Ann. § 31.08 (Vernon 1982) (making tax records readily available to the public and providing for issuance at minimal cost of certificates showing taxes due on property).
The 1966 amendment to the Internal Revenue Code makes it clear that Congress knows how to require recordation of a lien, if Congress decides to do so. Plainly, Congress did impose this requirement on federal tax liens and, equally plainly, has not done so in the same explicit terms for state tax liens in bankruptcy.
Debtors also point to portions of the history of the 1978 bankruptcy legislation, 1978 U.S. Code Cong. & Admin.News 5787-6573, indicating that Congress addressed the issue of how to accord priority to various tax claims for purposes of section 507, which addresses only unsecured claims, and rely extensively on and quote from articles by Professor William Plumb, including a 1974 article published in Cornell Law Review — The Tax Recommendations of the Commission on the Bankruptcy Law — Priority and Dischargeability of Tax Claims — which notes proposals that were discussed before the 1978 amendments of the bankruptcy laws.
We find no clear indication in the legislative history of the 1978 Bankruptcy Code, or any other authority appellants cite, that Congress by enacting section 507(a)(7) actually eliminated or intended to eliminate the secured status of perfected state tax liens — well recognized during the forty years between 1938 and 1978 — and to transform them into unsecured claims with only a defined priority. Instead, we view section 507 as addressed solely to the priority of unsecured claims, and we note that this construction of section 507(a)(7) does not render it an empty provision, because some state tax claims may be unsecured either under state law or because they are avoidable under one of the provisions of section 545.[4] Cf. Franchise Tax Board v. Danning (In re Perry), 487 F.2d 84 (9th Cir.1973) (applying equivalent provision of Bankruptcy Act and allowing avoidance of state income tax lien to the extent of its application to personal property because lien not perfected under state law), cert. denied, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974).
In sum, the plain language of the Bankruptcy Code provides that statutory liens not avoidable under any condition specified in section 545 have secured status, and *357 there is nothing in the Code that suggests state tax liens should not continue to be regarded as statutory liens if they meet the conditions of section 545. We are disinclined to construe a 1966 amendment to the Internal Revenue Code requiring only that a federal tax lien be recorded to be effective against subsequent purchasers (or holders of security or lien interests) as an expression of a congressional purpose to limit the reach of state statutory liens for purposes of the Bankruptcy Code. Absent a clear announcement of Congress’ intent to accomplish such a significant change, we also decline to construe the enactment of a provision dealing with the relative priority of unsecured tax claims in one section of the Bankruptcy Code as impliedly repealing or amending long-settled law apparently preserved elsewhere in the Code.

*356
II

*357 Appellants also argue that the Texas property taxation scheme creates an imperfect statutory lien for purposes of bankruptcy. Appellants contend that the Texas system is ineffective to establish a valid lien because it creates a lien on the first day of each year, before the amount of taxes due for that year has been computed and before the precise tax has been formally assessed. Similarly, appellants claim that the lack of any notice — beyond that available through public records — of a tax lien should render the lien invalid.
We reiterate, however, that section 545 details the circumstances under which a statutory lien may be avoided. Congress specified those conditions it deemed essential to an unavoidable valid statutory lien, and, by omission, declined to require other preconditions, such as those now urged by appellants. The Texas statutory lien for any given year’s ad valorem taxes on property goes into effect on the first day of that year; therefore, it is not avoidable on the grounds that the lien first becomes effective on the occurrence of a condition described under subsection 545(1). The lien’s enforceability against subsequent purchasers (and others) makes it unavoidable under subsection 545(2). Finally, the state tax lien is not for rent or a lien of distress for rent, and therefore is not avoidable under the conditions of subsections 545(3) or 545(4). Congress explicitly detailed the circumstances under which a statutory lien could be avoided; the circumstances of which appellants complain are not among these. See 11 U.S.C. § 545 (setting forth conditions under which a statutory lien may be avoided); id. § 101 (defining “lien” and “statutory lien”); Tex. Const. art. VIII § 15; Tex.Prop.Tax Code Ann. § 32.01 (Vernon 1982) (creating liens in favor of taxing entities on January 1 of each year in which taxes will fall due); see also State of Texas v. Moody’s Estate, 156 F.2d 698 (5th Cir.1946) (construing predecessor Texas property tax statutes). Further, 11 U.S.C. § 546(b) permits perfection after bankruptcy filing. See Maryland National Bank, 723 F.2d at 1143.
Accordingly, we conclude that the tax liens against a debtor’s real property created by Texas statutes for ad valorem taxes assessed against that property are statutory liens for purposes of the Bankruptcy Code’s secured claim provisions. Accordingly, the decision below is
AFFIRMED.

. Debtors assert or concede that taxes falling due during the administration of the estate are entitled to the status of a first-priority unsecured claim and are payable as expenses of the estate under 11 U.S.C. § 503(b)(1)(B)(i). We hold that the 1982 ad valorem taxes are also secured claims. No subsequent years are at issue on this appeal.

. On appeal, the debtors initially raised four additional points, which they have since conceded they did not properly preserve for our review by including these in their statement of issues on appeal from the bankruptcy court, as required by Bankruptcy Rule 8006.

. The version of section 545 in effect in 1982 when these debtors filed provided:
"The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
"(1) first becomes effective ¿gainst the debt- or—
"(A) when a case under this title concerning the debtor is commenced;
“(B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
"(C) when a custodian is appointed or takes possession;
"(D) when the debtor becomes insolvent; "(E) when the debtor’s financial condition fails to meet a specified standard; or
"(F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;
"(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;
"(3) is for rent; or
"(4) is a lien of distress for rent."

. In 1984, Congress amended subsection 507(a) by adding a new subsection 507(a)(5) and renumbering subsequent subsections. Consequently, the subsection 507(a)(7) referred to by the parties was actually numbered (a)(6) when this petition was filed in 1982. This opinion uses "507(a)(7)” to refer to the provision so designated by virtue of the 1984 amendments (i.e. former section 507(a)(6)). The version of section 507 in effect in 1982 provided:
"(a) The following expenses and claims have priority in the following order:
"(1) First, administrative expenses____
"(2) Second, unsecured claims allowed under section 502(f) of this title.
"(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay ...

u

"(4) Fourth, allowed unsecured claims for contributions to employee benefit plans ...

u

“(5) Fifth, allowed unsecured claims of individuals [as specified] ... "(6) Sixth [now Seventh], allowed unsecured claims of governmental units, only to the extent that such claims are for—
"(A) a tax on or measured by income or gross receipts ...
"(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;
"(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
“(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection ...
"(E) an excise tax ...
"(F) a customs duty ...
"(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.”